SHANNON, Judge.
This is an appeal from a summary judgment entered in favor of the defendant in the lower court.
On April 28, 1958, the appellant, plaintiff below, applied to the Sarasota agent of the Iowa Mutual Insurance Company for an employee’s fidelity bond on his new office manager, Claude L. Claypool. The plaintiff was already insured by the defendant company on another policy. The application was sent to the corporation’s home office in De Witt, Iowa, and the fidelity bond was subsequently issued as an endorsement for additional coverage on the contract already in existence. Later, after an investigation of Claypool, the corporation decided to cancel his fidelity bond, and on June 20, 1958, a notice of cancellation was sent to the plaintiff’s office by registered mail. This notice stated that the bond was cancelled effective July 20, 1958, and it was received by the same Claude L. Claypool as office manager. The registered mail receipt bears Claypool’s signature and is dated June 24, 1958.
The plaintiff never received actual notice of the cancellation and the unearned premium was credited to the plaintiff on the corporation books. In February of 1959 the plaintiff discovered that Claude L. Claypool *352 had embezzled $1,780. When the loss was discovered, notice was filed with the defendant insurance company, but because of the cancellation the insuror refused to be liable. Subsequently, the plaintiff brought this suit and the proceedings below resulted in a summary judgment for the insurance company.
The plaintiff has raised four points, but, as we see it, this case must turn on whether or not the fidelity bond was effectively can-celled prior to the insured’s loss. This determination must necessarily depend upon the wording of the policy.
Cancellation clauses appear in two places in the policy before us, namely, in the original contract, and also in the extension which incorporated Claypool’s fidelity bond. In the general overall policy the cancellation clause reads, in part, as follows:
“This Policy as an entirety (including all Insuring Agreements) or any Insuring Agreement may be cancelled * * * (c) by the Company serving upon the Named Insured at the address shown in this Policy written notice, or sending such notice by registered mail, stating therein the date when such cancellation shall be effective, but such date, if the notice be served, shall be not less than 30 days after such service, or if sent by registered mail, not less than 35 days after the date borne by the sender’s registry receipt. The mailing of notice as aforesaid shall be sufficient proof of its delivery to the Insured. * * * ”
The second cancellation provision is found in Claypool’s fidelity bond extension, and reads, in part, as follows:
“ * * * * * * on notice to the Insured, not less than 30 days after service, or, if sent by registered mail, not less than 30 days after the receipt; * * * Cancellation of this bond in its entirety shall be deemed effective if notice be given as provided in (a) * * (Emphasis added.)
The notice provided that the cancellation was effective on July 20, 1958. Since this notice was not received until June 24, 1958, this violated the 30 day provisions noted above. The appellant contends that because of this discrepancy the notice of cancellation was ineffective and he cites us to the case of Silvernail v. American Fire & Casualty Co., Fla.1955, 80 So.2d 707, at page 708, where the Supreme Court held a notice of cancellation ineffective, saying:
“ * * * The notice stated that if the premiums were not paid the company would cancel the policy at noon on November 26, 1950. In computing time the first day should be excluded and the last day included. (Citing authority.) A simple calculation shows that from November 21, 1950 to noon, November 26, 1950 is not five full days, therefore, if the notice in form is sufficient, it was not sufficient in time to comply with the terms of the policy.”
We note, however, that the Silvernail case involved a conditional cancellation. If the insured in that case had paid the premium the cancellation notice would have been ineffective, but, since the insured did not pay the premium, the Court held that giving him less than the time required by the policy for cancellation made the notice ineffective and the policy carried on. The basic distinction between the Silvernail case and the instant one is that there is nothing conditional in the cancellation now before us. Thus our problem is more closely analogous to that in Bradley v. Associates Discount Corp., Fla. 1952, 58 So.2d 857, where a discrepancy between the notice and the policy provisions was resolved by the terms of the policy— but the notice was not invalidated. This seems to be in accord with well established insurance law in other jurisdictions. See Seaboard Mut. Casualty Co. v. Profit, 4 Cir. 1940, 108 F.2d 597, 126 A.L.R. 1105; 29 Am.Jur., Insurance, § 384. Therefore, we conclude that the notice of cancellation in the case at bar was effective, not on the date contained therein of July 20, 1958, but *353 rather on July 24, 1958, in accordance with the policy provisions.
The appellant also contends that the bond is still in effect because the insured never received actual notice of the cancellation. However, if the terms of the policy are met, it does not matter whether the insured received actual notice. This has been established in Florida by the Bradley case, supra, and by Service Fire Insurance Co. of N. Y. v. Markey, Fla.1955, 83 So.2d 855. In the Bradley case the court stated 58 So.2d at page 858:
“We cannot stretch the rule of strict construction of insurance contracts in favor of the insured to mean that where the language is plain and unambiguous it may be given an added meaning * *
In the Markey case [83 So.2d 856], the court relied upon the Bradley case and held:
“ * * * The notice provision in the policy in the case at bar conforms substantially with the notice provision in the policy in Bradley v. Associates Discount Corp., supra. The loss in the case at bar took place after the notice of cancellation was mailed to the plaintiff who testified that he did not get the notice of cancellation. This court held that mailing of the notice by registered mail without return receipt was ‘meticulous compliance’ with the law *
“Our attention is directed to Womack v. Fenton, 28 N.J.Super. 345, 100 A.2d 690, treating the question of whether or not a jury issue was presented as to mailing of the notice by a denial as to its receipt. The court held that the weight of authority is to the effect that where the mailing of the written notice of cancellation in strict conformity with the expressed essentials of such a provision is established by proof, the cancellation is effectual without evidence of the receipt of the notice by the insured * *
The fact that the very employee who was covered by the bond happened to be the one who received the notice of cancellation is unfortunate, but it does not alter the fact that the insuror here complied with the provisions of the policy. Compliance with the policy, and not actual receipt by the insured, is the criteria upon which this case must be decided.
Affirmed.
ALLEN, C. J., and SAULS, RICHARD, Associate Judge, concur.